UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODNEY KOCH,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>VICTOR AUSTIN, et al.,<br><br>　　　　　Defendants.<br>_____/ | CASE NO. 1:03-cv- 5021AWI-DLB (PC)<br><br>ORDER GRANTING DEFENDANT AUSTIN'S MOTION FOR SUMMARY JUDGMENT<br><br>(Doc. 86) |

I.　Defendant's Motion for Summary Judgment

　　A.　Procedural History

Plaintiff Rodney Koch ("plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on plaintiff's complaint, filed January 8, 2003, against defendants Austin, Traynham and Witcher.[1] On December 17, 2004, defendant Austin ("defendant") filed a motion for summary judgment. Plaintiff filed an opposition on January 10, 2005, defendant filed a reply on January 14, 2005 and plaintiff filed a further response on January 31, 2005.[2]

The Court conducted an in camera review of documents which were the subject of a discovery dispute. On August 29, 2005, the Court ordered defendants to produce redacted versions of specific documents to plaintiff. Plaintiff was given time to file additional opposition to the motion

---

[1] On March 9, 2004, the District Court adopted a recommendation thereby granting in part a motion to dismiss defendants Black, Gonzales, Reed, Calderon and Alameida from this action.

[2] Plaintiff was notified of the requirements for opposing a summary judgment motion on May 30, 2003.

for summary judgment. Plaintiff filed a supplemental opposition on September 19, 2005.

B.        <u>Legal Standard</u>

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" <u>Id</u>. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. <u>Id</u>. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Id</u>. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." <u>Id</u>. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); <u>Matsushita</u>, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted). A verified complaint in a pro se civil rights action may constitute an opposing affidavit for purposes of the summary judgment rule, where the complaint is based on an inmate's personal knowledge of admissible evidence, and not merely on the inmate's belief. McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987) (per curium); Lew v. Kona Hospital, 754 F.2d 1420, 1423 (9th Cir. 1985); F.R.C.P. 56(e).

D.     Undisputed Facts[3]

Plaintiff Rodney S. Koch was a prisoner of the California Department of Corrections incarcerated at the California Correctional Institution on November 23, 2002. Plaintiff's Complaint at ¶¶2, 13-14. Victor A. Austin was on duty as the armed observation post officer for exercise yard one and two within housing unit eight of the administrative segregation unit on the afternoon of November 23, 2002. Plaintiff's Complaint at ¶13. On the afternoon of November 23, 2002, plaintiff and inmate Davis were released onto exercise yard one for afternoon recreation. Plaintiff's Complaint at ¶14. At approximately 2:10:18, plaintiff became involved in what would be the first of three mutual combat altercations with another inmate (Davis). Videotape of Incident Camera A 14:10:18, Camera B 14:12:30; Plaintiff's Complaint at ¶ 14. Plaintiff struck Davis in the face once during a handball game, knocking him unconscious and immediately thereafter plaintiff and the other inmates continued to program as though nothing had occurred. *Id*. Approximately one minute after rendering Davis unconscious, plaintiff, at the direction of Officer Austin, attempted to help Davis to his feet, but Davis fell back down. Plaintiff's Complaint at ¶ 17-18; Videotape of Incident Camera A 14:11:20, Camera B 14:13:32. Approximately two minutes after being knocked unconscious, Davis sat against the wall talking with another inmate for several minutes while plaintiff and other inmates played handball. Complaint at ¶ 19; Videotape of Incident Camera A 14:12:12, Camera B 14:14:24. Davis then got to his feet and ran toward plaintiff at which time the two engaged in mutual combat with plaintiff pulling off Davis' shirt. Complaint at ¶ 28; Videotape of Incident Camera A 14: 15:16, Camera B 14:17:28. Defendant Officer Austin ordered the yard down and directed the control officer to activate a general alarm. Austin then ordered the combatants to get down two more times; when neither inmate responded, Austin fired a XM 1006 round (rubber projectile) from his 40 mm launcher. Complaint at ¶ 30-31; Videotape of Incident Camera A 14:15:27, Camera B 14:17-39; Dec. Of Austin, ¶ 4. The round fired by Austin caused the inmates to separate with plaintiff sitting against the South wall and Davis sitting against the West wall. Complaint at ¶ 31; Videotape of Incident Camera A 14:15:36, Camera B 14:17-48. Austin then

---

[3]This summary of undisputed facts was complied from defendant's and plaintiff's statements of material facts and the material facts in plaintiff's complaint which are not reasonably in dispute

4

ordered plaintiff off the yard but plaintiff refused, stating that Davis should be removed first. Complaint at ¶ 34; Videotape of Incident Camera A 14:15:47, Camera B 14:17:59; Dec. Of Austin ¶ 5. Plaintiff states that defendant Austin ordered him to go to the yard door to be placed in handcuffs but he refused because he did not want to become defenseless as the other inmate was on the yard unrestrained. Complaint at ¶¶ 34-35. Austin ordered inmate Davis off the yard but he also refused and then got up and continued to argue with plaintiff. Complaint at ¶ 35; Videotape of Incident Camera A 14:15:47, Camera B 14:17:59.

After approximately two and a half minutes of both inmates refusing to come off the yard as they were verbally arguing and repeatedly standing and pointing at one another, inmate Davis ran at plaintiff. Complaint at ¶ 36; Videotape of Incident Camera A 14:15:47-14:18:24, Camera B 14:17:59-14:20:36; Dec. of Austin ¶ 6. Austin fired a second XM-1006 round at Davis' lower extremity as he charged plaintiff. Videotape of Incident Camera A 14:18:25, Camera B 14:20:37; Dec. Of Austin ¶ 6. The inmates then engaged in mutual combat until plaintiff knocked Davis to the ground and then sat on his chest and repeatedly struck Davis in the face with his fists. Videotape of Incident Camera A 14:18:25-14:18:40, Camera B 14:20:37-14:20:52. Defendant Reed then ordered Davis to the yard door at which time Davis came after plaintiff and they engaged in mutual combat for a third time; Plaintiff states that he did so in self defense. Complaint at ¶ 37. Officer Austin then discharged a third XM-1006 round which struck plaintiff on the left side of his lower back; however, plaintiff continued to strike Davis in the face for approximately another three seconds before finally getting off of his chest. Videotape of Incident Camera A 14:18:34 - 14:18:37, Camera B 14:20:36 - 14:20:39. Plaintiff alleges the third projectile struck Davis in the upper right eye which knocked him unconscious. Complaint at ¶ 39.

Plaintiff's injuries from the projectile consist of an abrasion to his back, pain and loss of the ability to hold urine. Complaint at ¶ 30, 40, Exhibits A-B; Dec. Of Austin ¶ 9. Plaintiff then voluntarily left the yard as ordered without further incident as inmate Davis lay unconscious. Complaint at ¶ 40; Videotape of Incident 14:18:34-14:18:37, 14:20:36-14:20:39; Dec. Of Austin ¶10.

No criminal charges were brought against plaintiff for the November 23, 2002 incident as

5

the matter was not referred for prosecution by prison officials. Defendant Witcher's Response to Request for Production No. 14.

Plaintiff submits the following additional facts which he contends are in dispute and preclude summary judgment in favor of defendant Austin:

1. Defendant Austin observed the first altercation between plaintiff and Davis. Austin made this observation from his position in the yard one Armed observation post. Complaint ¶ 16.

2. California Correctional Institution Warden, Authur Calderon ordered an investigation into the allegations stated in plaintiff's December 12, 2002 CDC inmate appeal. The investigation was conducted by the Investigative Services Unit (ISU). Exhibit "B" to Plaintiff's Opposition, Second Level Response to Plaintiff's CDC Inmate Appeal dated February 27, 2003.

3. The ISU investigation regarding the November 23, 2002 use of force concluded that all of the plaintiff's allegations, as stated in his December 12, 2002 CC inmate appeal were sustained based on a preponderance of the evidence regarding defendant Austin.

D. Plaintiff's Contentions

Plaintiff argues that upon seeing the initial (first) altercation between plaintiff and inmate Davis, defendant chose to act with deliberate indifference to both inmates' safety. Plaintiff contends Austin knew he had an affirmative duty to act when he observed the first altercation and by his decision not to act, he knowingly violated plaintiff's civil rights, state and federal law and CDC policies. Plaintiff alleges that at this point Austin should have called the yard down. Plaintiff alleges that Austin's decision not to act led to more violence and he did so in hopes of seeing more "Gladiator Fighting." Plaintiff contends Austin targeted plaintiff even though he was not the aggressor and fired his weapon directly at plaintiff hitting him directly in the kidney. Plaintiff alleges the block gun is not designed to shoot directly at a person but rather "skipped off the ground" prior to impact to decrease the possibility of serious injury.

Plaintiff further asserts that each administrative segregation yard area has a remote controlled

water cannon that is equipped with a camera that feeds realtime footage to a monitor that is located within the armed observation post. Plaintiff alleges the device sprays water and mace, neither of which would cause bodily injury. Plaintiff contends that defendant Austin had ample time between the three altercations to utilize other forms of control than the Block gun.

Plaintiff contends that defendant Austin violated his right to be free from excessive force in violation of the Eighth Amendment and further violated his rights to due process and equal protection by falsifying documents, not reporting all known facts involving the November 23, 2002 incident and withholding key facts of evidence in a criminal case. Plaintiff also alleges that defendant Austin conspired with the other defendants to cover up his negligence of duty.

Plaintiff also argues that at the time all defendants in this case filed their reports regarding the November 23, 2002 incident, the incident was being treated as a criminal offense and defendants conspired to purposefully omit information that would lead to possible disciplinary actions against fellow officers.

    D.    Discussion

        1.    Excessive Force Claim

Defendant Austin contends he is entitled to qualified immunity for plaintiff's allegations of excessive force. Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In ruling upon the issue of qualified immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001). If, and only if, a violation can be made out, the next step is to ask whether the right was clearly established. Id.

Whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishment Clause [of the Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992) (citing Whitley v. Albers, 475 U.S. 312, 320-21 (1986)). "In determining whether the use of force was wanton and

unnecessary, it may also be proper to evaluate the need for application of force, the relationship between the need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" Hudson, 503 U.S. at 7. "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id.

Not "every malevolent touch by a prison guard gives rise to a federal cause of action. Id. at 9. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." Id. (citing Johnson v. Glick, 481 F.2d 1028, 1033 (2nd Cir. 1973) (cert. denied sub nom. Johnson, 414 U.S. 1033 (1973)). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" Id. at 9-10. "What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishment Clause depends upon the claim at issue . . . ." Id. at 8. "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." Id. at 8 (quotations and citations omitted). "[E]xtreme deprivations are required to make out a[n] [Eighth Amendment] conditions-of-confinement claim," and "deliberate indifference to medical needs" violates the Eighth Amendment "only if those needs are 'serious.'" Id. at 9 (citation omitted).

With respect to these types of claims, "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Id. at 9 (quotations and citations omitted). With respect to excessive force claims, however, the malicious and sadistic use of force to cause harm *always* violates contemporary standards of decency, regardless of whether or not significant injury is evident. Id. at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines de minimis uses of force, not de minimis injuries)).

Defendant Austin has presented evidence, most significantly the video tape of the incident, which demonstrates the absence of a genuine issue of material fact regarding plaintiff's excessive

8

force claim. It is undisputed that plaintiff and inmate Davis engaged in mutual combat on three (3) separate occasions on November 23, 2002. While it is disputed whether or not defendant Austin saw the original confrontation, it is undisputed that upon observing mutual combat (on the second occasion) between plaintiff and Davis, defendant Austin ordered the yard down and the combatants did not comply. This is evident from the videotape because the other inmates got down and plaintiff and Davis continued fighting. Plaintiff does not dispute that upon being struck with the block, he and Davis stopped fighting, went to separate walls and got down. Complaint at ¶ 33. While plaintiff was apparently "explaining" why he did not want to leave the yard before Davis, Davis ran to plaintiff and for a third time, engaged in mutual combat with plaintiff. Complaint at ¶ 35-36. Plaintiff admits and it is very clear from the videotape that he knocked Davis to the ground, sat on his chest and continued to strike Davis. Complaint at ¶ 37. While plaintiff does not characterize the third fight the same way, the Court has viewed the videotape and even in the most favorable light to plaintiff, plaintiff was pummeling Davis in the face and continued to do so even after Davis stopped fighting back and remained motionless. It was only after Austin fired and struck plaintiff with the block that plaintiff stopped.

Even when viewed in the light most favorable to plaintiff, the facts demonstrate that defendant Austin discharged his 40 mm launcher only to restore discipline and not in a malicious sadistic fashion. Plaintiff argues that defendant Austin could have utilized another weapon (i.e., mace or the water cannon), however, this Court cannot second guess the split second judgment of defendant Austin as he witnessed plaintiff continue to strike Davis as he laid motionless on his back, making no efforts to defendant himself. The Court finds as a matter of law that there is neither direct nor circumstantial evidence that there was an unlawful amount of force applied. Because the undisputed facts fail to show that defendant Austin's conduct on November 23, 2002 violated a constitutional right, defendant is entitled to summary judgment on this claim and the Court need not further analyze defendants qualified immunity defense (See Saucier v. Katz, 533 U.S. 194, 201 (2001).

      2.    <u>Due Process Claim.</u>

Plaintiff alleges that defendant Austin violated his Fourteenth Amendment right to Due

Process and Equal Protection by allegedly falsifying documents, not reporting all known facts and withholding key facts regarding the November 23, 2002 incident in a criminal case.

The Due Process Clause of the Fourteenth Amendment protects prisoners from being deprived of life, liberty, or property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Sandin v. Connor, 515 U.S. 472 (1995).

Equal protection claims arise when a charge is made that similarly situated individuals are treated differently without a rational relationship to a legitimate state purpose. See San Antonio School District v. Rodriguez, 411 U.S. 1 (1972). In order to state a § 1983 claim based on a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must show that defendants acted with intentional discrimination against plaintiff or against a class of inmates which included plaintiff. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (equal protection claims may be brought by a "class of one"); Reese v. Jefferson Sch. Dist. No. 14J, 208 F.3d 736, 740 (9th Cir. 2000); Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998); Federal Deposit Ins. Corp. v. Henderson, 940 F.2d 465, 471 (9th Cir. 1991); Lowe v. City of Monrovia, 775 F.2d 998, 1010 (9th Cir. 1985).

Defendants present undisputed evidence that there were no criminal charges filed against plaintiff as a result of the November 23, 2002 incident as the matter was not referred by prison officials for prosecution. Defendant Witcher's Response to Request for Production No. 14. In his opposition, plaintiff argues that defendants had a duty to truthfully report the incidents of November 23, 2002. Plaintiff asks the Court to draw inferences from all of the evidence provided to see that defendants lied in their reports thereby violating his constitutional rights.

The court finds that defendants have met their initial burden of informing the court of the basis for their motion, and identifying those portions of the record which they believe demonstrate the absence of a genuine issue of material fact. The burden therefore shifts to plaintiff to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Plaintiff submits no evidence establishing the

existence of a liberty interest for which he contends his due process rights were violated. See Sandin v. Connor, 515 U.S. 472 (1995). Nor does plaintiff demonstrate that defendants acted with intentional discrimination against him.

Plaintiff has failed to establish that a genuine issue as to any material fact actually does exist regarding his due process and equal protection claims. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). As stated above, in attempting to establish the existence of this factual dispute, plaintiff may not rely upon the mere allegations or denials of his pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973). Plaintiff was not criminally prosecuted for the incidents of November 23, 2002 and he fails to establish any liberty interest for which his rights were violated. At this stage in the action, plaintiff must present some evidence in support of his claim. Plaintiff may not continue to rely on conclusory assertions in his opposition that his rights were chilled.

To the extent plaintiff is claiming that because of defendant's conduct he was improperly charged with a crime, as noted by defendant, this claim also fails because plaintiff was not criminally prosecuted for the events of November 23, 2002. "In order to prevail on a § 1983 claim of malicious prosecution, a plaintiff 'must show that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right.'" Awabdy v. City of Adelanto, No. 02-57118, 2004 WL 1118726 (9th Cir. May 20, 2004) (citing to Freeman v. City of Santa Ana, 68 F.3d 1180, 1189 (9th Cir. 1995)).

Finally, to the extent plaintiff alleges that Austin's conduct also violated the California Constitution, the discussion of plaintiff's federal constitutional claim resolves both the federal and state constitutional claims. Los Angeles County Bar Assoc. v. Eu, 979 F.2d 697, 705 (9th Cir. 1992) (citing Payne v. Superior Court, 132 Cal.Rptr. 405, 410 n. 3 (1976) (the California Constitution provides the same basic guarantee as the Fourteenth Amendment of the United States Constitution)).

    4.  Conspiracy

Plaintiff also alleges that defendant Austin "conspired with the defendants herein to cover

1  up his negligence of duty and violations of plaintiff's civil rights to wit: conspiracy to interfere with
2  civil rights and conspiracy to deprive the plaintiff equal protection rights under 42 U.S.C. 1985 and
3  42 U.S.C. 1985(3)." Complaint at ¶ 47.  In their motion, defendant contends that conclusory
4  assertions of a conspiracy are insufficient to sustain a conspiracy claim and that plaintiff has
5  presented no evidence in support of his conclusory assertions of the existence of a conspiracy.

6  Section 1985 proscribes conspiracies to interfere with an individual's civil rights.  To state
7  a cause of action under section 1985(3), plaintiff must allege: (1) a conspiracy, (2) to deprive any
8  person or class of persons of the equal protection of the laws, (3) an act by one of the conspirators
9  in furtherance of the conspiracy, and (4) a personal injury, property damage or deprivation of any
10 right or privilege of a citizen of the United States.  Gillispie v. Civiletti, 629 F.2d 637, 641 (9th Cir.
11 1980); Giffin v. Breckenridge, 403 U.S. 88, 102-03 (1971).  Section 1985 applies only where there
12 is a racial or other class-based discriminatory animus behind the conspirators' actions.  Sever v.
13 Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992).

14 In interpreting these standards, the Ninth Circuit has held that a claim under § 1985 must
15 allege specific facts to support the allegation that defendants conspired together.  Karim-Panahi v.
16 Los Angeles Police Dept., 839 F.2d 621, 626 (9th Cir. 1988).  A mere allegation of conspiracy
17 without factual specificity is insufficient to state a claim under 42 U.S.C. § 1985.  Id.; Sanchez v.
18 City of Santa Anna, 936 F.2d 1027, 1039 (9th Cir. 1991).

19 Plaintiff's complaint does not contain any specific factual allegations supporting the
20 existence of a conspiracy between defendants.  Nor does plaintiff provide any evidence in support
21 of his conclusory assertion that defendants entered into a conspiracy in his opposition to the motion
22 for summary judgment.  The court finds that defendant has met his initial burden of informing the
23 court of the basis for their motion, and identifying those portions of the record which he believes
24 demonstrate the absence of a genuine issue of material fact.  The court finds that plaintiff has not met
25 his burden of establishing the existence of a genuine issue of any material fact.  See Matsushita Elec.
26 Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The court therefore finds that defendant
27 is entitled to judgment as a matter of law on plaintiff's conspiracy claim and recommends that
28 defendant's motion for summary adjudication on this claim be granted.

E.    <u>Conclusion</u>

Defendant Austin has demonstrated that there are no genuine issues as to any material facts and that he is entitled to judgment as a matter of law on all of the claims against him. Defendant Austin's motion for summary judgment is HEREBY GRANTED. This action shall proceed against defendants Traynham and Witcher.

IT IS SO ORDERED.

**Dated:    September 28, 2005**                        **/s/ Anthony W. Ishii**
0m8i78                                                            UNITED STATES DISTRICT JUDGE