1

2

3

4

5

6

7

8

9

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODNEY KOCH, | CASE NO. 1:03-cv- 5021 AWI-DLB (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATION RECOMMENDING DEFENDANT TRAYNHAM AND WITCHER'S MOTION FOR SUMMARY JUDGMENT BE GRANTED |
| v. | |
| VICTOR AUSTIN, et al., | (Doc. 107) |
| Defendants. | |
| _____/ | |

I.      Defendant's Motion for Summary Judgment

      A.      Procedural History

      Plaintiff Rodney Koch ("plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  This action is proceeding on plaintiff's complaint, filed January 8, 2003, against defendants Traynham and Witcher (defendants) for allegedly failing to make accurate reports concerning the use of force during a November 23, 2003 incident and /or ratifying the inaccurate report.[1]  On June 17, 2005, defendants filed the instant motion for summary judgment.  Plaintiff filed an opposition on August 23, 2005 and defendant filed a reply on January 13, 2006.[2]

---

[1]On March 9, 2004, the District Court adopted this Court's recommendation to dismiss defendants Black, Gonzales, Reed, Calderon and Alameida from this action.  On September 29, 2005, the Court granted defendant Austin's motion for summary judgment and ordered this action proceed against defendant Traynham and Witcher only.

[2] Plaintiff was notified of the requirements for opposing a summary judgment motion on May 30, 2003.

1        B.      Legal Standard

2        Summary judgment is appropriate when it is demonstrated that there exists no genuine issue

3  as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R.

4  Civ. P. 56(c).  Under summary judgment practice, the moving party

5              [A]lways bears the initial responsibility of informing the district court
               of the basis for its motion, and identifying those portions of "the
6              pleadings, depositions, answers to interrogatories, and admissions on
               file, together with the affidavits, if any," which it believes
7              demonstrate the absence of a genuine issue of material fact.

8  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the

9  burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made

10  in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"

11  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon

12  motion, against a party who fails to make a showing sufficient to establish the existence of an

13  element essential to that party's case, and on which that party will bear the burden of proof at trial.

14  Id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's

15  case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment

16  should be granted, "so long as whatever is before the district court demonstrates that the standard

17  for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

18        If the moving party meets its initial responsibility, the burden then shifts to the opposing

19  party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec.

20  Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence

21  of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is

22  required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery

23  material, in support of its contention that the dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586

24  n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that

25  might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477

26  U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630

27  (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

28  return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436

1   (9th Cir. 1987).

2       In the endeavor to establish the existence of a factual dispute, the opposing party need not

3   establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

4   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

5   trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

6   the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

7   Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

8   amendments).

9       In resolving the summary judgment motion, the court examines the pleadings, depositions,

10  answers to interrogatories, and admissions on file, together with the affidavits, if any.  Rule 56(c).

11  The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable

12  inferences that may be drawn from the facts placed before the court must be drawn in favor of the

13  opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655

14  (1962) (per curiam).  Nevertheless, inferences are not drawn out of the air, and it is the opposing

15  party's obligation to produce a factual predicate from which the inference may be drawn.  Richards

16  v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th

17  Cir. 1987).

18      Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show

19  that there is some metaphysical doubt as to the material facts.  Where the record taken as a whole

20  could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

21  trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).  A verified complaint in a pro se civil rights

22  action may constitute an opposing affidavit for purposes of the summary judgment rule, where the

23  complaint is based on an inmate's personal knowledge of admissible evidence, and not merely on

24  the inmate's belief.  McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987) (per curium); Lew

25  v. Kona Hospital, 754 F.2d 1420, 1423 (9th Cir. 1985); F.R.C.P. 56(e).

26

27

28

D.     Underlying Facts[3]

1.     On November 23, 2002, at approximately 1:10 p.m., plaintiff punched inmate Davis in the head and knocked him out.  Declaration of Steve R. Albritton, Custodian of Records for videotape, Exhibit B - Videotape of November 23, 2002 incident.

2.     Plaintiff was the aggressor and threw the only punch.  *Id.*

3.     At 1:15 p.m. Davis went after plaintiff to avenge himself.  *Id.*

4.     Davis shoved plaintiff and attempted to hit him.  *Id.*

5.     Plaintiff landed a couple of blows to Davis' head and pulled Davis' t-shirt over his head.  *Id.*   Declaration of Steve R. Albritton, Custodian of Records, Exhibit A - plaintiff's Central File at p. 9.

6.     At about this time, Correctional Officer Austin yelled for the inmates to get down and the inmates not involved in the fight did so.  Declaration of Steve R. Albritton, Custodian of Records, Exhibit A at p. 2, 10 and Exhibit B.

7.     Plaintiff hit Davis in the face and head several times as he stood over Davis who had gone to the ground with the t-shirt wrapped around his head.  Declaration of Steve R. Albritton, Custodian of Records, Exhibit B.

8.     Davis was seated on the ground while plaintiff was hitting him the head and face. *Id.*

9.     Davis got to his feet and the two inmates separated, going to take seats on the small yard walls about 30 feet apart.  *Id.*, Declaration of Steve R. Albritton, Custodian of Records, Exhibit A, p. 2, 10.

10.    As the inmates sat 30 feet apart, they continued to taunt one another, while gesturing with their hands.  *Id.*

11.    At 1:18 p.m., Davis charged plaintiff.  Declaration of Steve R. Albritton, Custodian of Records, Exhibit B.

---

[3]This summary of undisputed facts was complied from defendant's separate statement of undisputed material facts and the material facts in plaintiff's complaint which are not reasonably in dispute.  Plaintiff did not file a separate statement of facts in dispute.

12. Plaintiff immediately knocked Davis down, straddled Davis' chest and pummeled him with both hands. *Id.*

13. Plaintiff beat Davis until Davis lost consciousness. *Id.*

14. Correctional Officer Austin used his launcher to propel rounds at the inmates to break up the fight. *Id.* Declaration of Steve R. Albritton, Custodian of Records, Exhibit A, p. 2, 10.

15. Plaintiff got off Davis and left the yard. *Id.*

16. Austin sounded an alarm during the second altercation. Declaration of Steve R. Albritton, Custodian of Records, Exhibit A, p. 2.

17. He also fired a round from his 40-mm launcher which caused the inmates to cease fighting. *Id.*

18. Correctional Officer Austin shouted warnings and orders when plaintiff and Davis fought a third time, and he also sounded an alarm. Declaration of Steve R. Albritton, Custodian of Records, Exhibit A, p. 2, 10 and Exhibit B.

19. Correctional Officer Austin also fired his 40-mm launcher striking plaintiff in the back. *Id.*

20. Lt. Trayham did not know of any altercation between Davis and plaintiff until he heard an alarm. Declaration of Lt. Trayham, ¶¶3, 4.

21. Lt. Trayham based his report on his review of the videotape from the time of the alarm, and the report prepared by Correctional Officer Austin. Declaration of Lt. Trayham, ¶4.

22. Lt. Trayham prepared his report as required by California Department of Corrections and California Correctional Institution regulations and policies. Declaration of Lt. Trayham, ¶5.

23. Associate Warden Witcher did not know about the altercation between plaintiff and Davis until he was informed of it in the course of his duties. Declaration of Lt. Trayham, ¶7, Response of Defendant Witcher to Plaintiff's First Set of Interrogatories, No.3.

24.   Associate Warden Witcher's supervisory repots were based on his review of the videotape from the time of the alarm and the reports filed by Correctional Officer Austin.   Declaration of Lt. Trayham, ¶7, Response of Defendant Witcher to Plaintiff's First set of Interrogatories, Nos.3-5 and Second Set of Interrogatories, No 1.

25.   Associate Warden Witcher prepared his reports pursuant to California Department of Corrections and California Correctional Institution policies and regulations.  *Id*.

26.   Associate Warden Witcher requested an investigation into plaintiff's allegations after receiving plaintiff's inmate appeal.  Response of Defendant Witcher to Plaintiff's First Set of Interrogatories, No.7 and Second Set of Interrogatories, Nos. 2, 4 and 5.

D.   Plaintiff's Contentions

Plaintiff contends that at the time defendants Trayham and Witcher filed their reports regarding the November 23, 2002 incident, they knew the incident was being treated as a criminal offense.  ¶¶ 51, 60.  Plaintiff alleges they conspired to purposefully omit information from their reports which would lead to possible disciplinary actions against their fellow officers, namely Officer Austin.  Plaintiff contends Austin knew he had an affirmative duty to act when he observed the first altercation and by his decision not to act, he knowingly violated plaintiff's civil rights, state and federal law and CDC policies.  Plaintiff alleges that Austin's decision not to act led to more violence and he did so in hopes of seeing more "Gladiator Fighting."  As noted, the Court granted summary judgment in favor of Officer Austin on September 29, 2005.  Plaintiff contends defendants violated his due process and rights and further conspired to deprive plaintiff equal protection.

In his opposition to defendants' motion for summary judgment, plaintiff objects to the motion, arguing it is untimely.  Plaintiff's objection is without merit.  On January 4, 2005, the Court entered an order extending the dispositive motion filing deadline to June 17, 2005.  Contrary to plaintiff's understanding, this extension applied to all parties.  Defendants Trayham and Witcher filed the present motion on June 17, 2005, the last day to file dispositive motions pursuant to the January 4, 2005 order.  Defendants' motion for summary judgment is therefore timely and plaintiff's objection is overruled.

6

1    D.    Discussion

2    1.    Due Process and Equal Protection Claims

3        Plaintiff sues defendants Trayham and Witcher claiming that they filed false reports

4    concerning his altercation with inmate Davis on November 23, 2002.  Plaintiff alleges that

5    defendants violated his Fourteenth Amendment right to Due Process and Equal Protection by

6    allegedly falsifying documents, not reporting all known facts and withholding key facts regarding

7    the November 23, 2002 incident, despite their knowledge that the incident was being treated as a

8    criminal case.  Plaintiff alleges that defendant Trayham, as the Senior Officer during the November

9    23rd incident, was directly responsible for approving the documents submitted by his subordinates

10   and he allowed the false incident reports to be filed which did not accurately describe the incident.

11   Complaint ¶ 51.  Plaintiff similarly alleges that defendant Witcher, despite viewing the videotapes

12   of the incident, neglected to ensure that all relevant facts were in the reports concerning the

13   November 23rd incident.  Complaint ¶ 60.

14       Defendants contend they are entitled to summary judgment on the due process and equal

15   protection claims because the mere filing of a false report does not violate the constitution.

16       The Due Process Clause of the Fourteenth Amendment protects prisoners from being

17   deprived of life, liberty, or property without due process of law.  Wolff v. McDonnell, 418 U.S. 539,

18   556 (1974).  In order to state a cause of action for deprivation of procedural due process, a plaintiff

19   must first establish the existence of a liberty interest for which the protection is sought.  Sandin v.

20   Connor, 515 U.S. 472 (1995).

21       Equal protection claims arise when a charge is made that similarly situated individuals are

22   treated differently without a rational relationship to a legitimate state purpose.  See San Antonio

23   School District v. Rodriguez, 411 U.S. 1 (1972).  In order to state a § 1983 claim based on a

24   violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must show that

25   defendants acted with intentional discrimination against plaintiff or against a class of inmates which

26   included plaintiff.  Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (equal protection

27   claims may be brought by a "class of one"); Reese v. Jefferson Sch. Dist. No. 14J, 208 F.3d 736, 740

28   (9th Cir. 2000); Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998); Federal Deposit Ins.

7

1   Corp. v. Henderson, 940 F.2d 465, 471 (9th Cir. 1991); Lowe v. City of Monrovia, 775 F.2d 998,

2   1010 (9th Cir. 1985).

3        Plaintiff submits no evidence establishing the existence of a liberty interest for which he

4   contends his due process rights were violated.  See Sandin v. Connor, 515 U.S. 472 (1995).  Nor

5   does plaintiff demonstrate that defendants acted with intentional discrimination against him.  There

6   were no criminal charges filed against plaintiff as a result of the November 23, 2002 incident as the

7   matter was not referred by prison officials for prosecution.  *See* Separate Statement of Undisputed

8   Material Facts, No. 18 filed in support of defendant Austin's Motion for Summary Judgment,

9   Document 86, Defendant Witcher's Response to Request for Production No. 14.  There is also no

10  evidence before the Court that plaintiff was subject to any disciplinary action based on the incident.

11       Plaintiff's allegations that defendants failed to accurately report and document the November

12  23, 2002 incident simply do not give rise to a claim for relief under federal law, due process, equal

13  protection or otherwise.  Plaintiff does not have a constitutionally protected right to any particular

14  documentation or investigation of the November 23, 2002 incident.  Further, a complaint alleging

15  that an officer filed a false report, by itself, fails to state a claim upon which relief can be granted.

16  *See Pratt v.* Rowland, 769 F. Supp. 1128, 1134 (N.D. Cal. 1991)[filing false report states claim only

17  if in retaliation for the exercise of a constitutional right]; *Jones v. Coughlin*, 45 F.3d 677 (2d Cir.

18  1995); *Hanrahan v. Lane*, 747 F.2d 1137, 1140 (7th Cir. 1984); *Sprouse v. Babcock*, 870 F.2d 450,

19  452 (8th Cir. 1989); *Freeman v. Rideout*, 808 F. 2d 949, 951 (2d Cir. 1986), *cert denied*, 485 U.S.

20  982 (1988).  Here, plaintiff does not allege that the reports were falsified in retaliation for the

21  exercise of a constitutional right, nor does he submit any evidence of the same.  He simply alleges

22  that the falsification of the reports violated his constitutional rights.  This claim has no merit.

23       Plaintiff has therefore failed to establish that a genuine issue as to any material fact actually

24  does exist regarding his due process and equal protection claims.  See  Matsushita Elec. Indus. Co.

25  v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  As stated above, in attempting to establish the

26  existence of this factual dispute, plaintiff may not rely upon the mere allegations or denials of his

27  pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or

28  admissible discovery material, in support of its contention that the dispute exists.  Rule 56(e);

1    <u>Matsushita</u>, 475 U.S. at 586 n.11; <u>First Nat'l Bank</u>, 391 U.S. at 289; <u>Strong v. France</u>, 474 F.2d 747,

2    749 (9th Cir. 1973).  Plaintiff was not criminally prosecuted for the incident on November 23, 2002

3    and he fails to establish any liberty interest for which his rights were violated.  At this stage in the

4    action, plaintiff must present some evidence in support of his claim.  Plaintiff may not continue to

5    rely on conclusory assertions in his opposition that his rights were chilled.

6          To the extent plaintiff is claiming that because of defendants' conduct he was improperly

7    charged with a crime, as noted, this claim also fails because plaintiff was not criminally prosecuted

8    for the events of November 23, 2002.  "In order to prevail on a § 1983 claim of malicious

9    prosecution, a plaintiff 'must show that the defendants prosecuted [him] with malice and without

10   probable cause, and that they did so for the purpose of denying [him] equal protection or another

11   specific constitutional right.'"  <u>Awabdy v. City of Adelanto</u>, No. 02-57118, 2004 WL 1118726 (9th

12   Cir. May 20, 2004) (citing to <u>Freeman v. City of Santa Ana</u>, 68 F.3d 1180, 1189 (9th Cir. 1995)).

13         Finally, to the extent plaintiff alleges that Austin's conduct also violated the California

14   Constitution, the discussion of plaintiff's federal constitutional claim resolves both the federal and

15   state constitutional claims. <u>Los Angeles County Bar Assoc. v. Eu</u>, 979 F.2d 697, 705 (9th Cir. 1992)

16   (citing <u>Payne v. Superior Court</u>, 132 Cal.Rptr. 405, 410 n. 3 (1976) (the California Constitution

17   provides the same basic guarantee as the Fourteenth Amendment of the United States Constitution)).

18         2.    <u>Conspiracy</u>

19         Plaintiff also alleges that defendants "conspired to interfere with  civil rights and conspired

20   to deprive the plaintiff equal protection rights under 42 U.S.C. 1985 and 42 U.S.C. 1985(3)."

21   Complaint at ¶ ¶ 52, 61.  In their motion, defendants contend that conclusory assertions of a

22   conspiracy are insufficient to sustain a conspiracy claim and plaintiff has presented no evidence in

23   support of his conclusory assertions of the existence of a conspiracy.

24         Section 1985 proscribes conspiracies to interfere with an individual's civil rights. To state

25   a cause of action under section 1985(3), plaintiff must allege: (1) a conspiracy, (2) to deprive any

26   person or class of persons of the equal protection of the laws, (3) an act by one of the conspirators

27   in furtherance of the conspiracy, and (4) a personal injury, property damage or deprivation of any

28   right or privilege of a citizen of the United States. <u>Gillispie v. Civiletti</u>, 629 F.2d 637, 641 (9th Cir.

9

1    1980); Giffin v. Breckenridge, 403 U.S. 88, 102-03 (1971).  Section 1985 applies only where there

2    is a racial or other class-based discriminatory animus behind the conspirators' actions.  Sever v.

3    Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992).

4    　　　In interpreting these standards, the Ninth Circuit has held that a claim under § 1985 must

5    allege specific facts to support the allegation that defendants conspired together.  Karim-Panahi v.

6    Los Angeles Police Dept., 839 F.2d 621, 626 (9th Cir. 1988).  A mere allegation of conspiracy

7    without factual specificity is insufficient to state a claim under 42 U.S.C. § 1985.  Id.; Sanchez v.

8    City of Santa Anna, 936 F.2d 1027, 1039 (9th Cir. 1991).

9    　　　Plaintiff's complaint does not contain any specific factual allegations supporting the

10   existence of a conspiracy between defendants.  Nor does plaintiff provide any evidence in support

11   of his conclusory assertion that defendants entered into a conspiracy in his opposition to the motion

12   for summary judgment.  The court finds that plaintiff has not met his burden of establishing the

13   existence of a genuine issue of any material fact.  See Matsushita Elec. Indus. Co. v. Zenith Radio

14   Corp., 475 U.S. 574, 586 (1986).  The court therefore finds that defendant is entitled to judgment

15   as a matter of law on plaintiff's conspiracy claim.

16   　　　E.    Conclusion

17   　　　Defendants Trayham and Witcher have demonstrated that there are no genuine issues as to

18   any material facts and that they are entitled to judgment as a matter of law on all of the claims against

19   them.   The Court therefore recommends that defendants' motion for summary judgment be

20   GRANTED, thereby concluding this action it its entirety.

21   　　　These Findings and Recommendations will be submitted to the United States District Judge

22   assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within twenty (20)

23   days after being served with these Findings and Recommendations, plaintiff may file written

24   ///

25   ///

26   ///

27   ///

28   ///

objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and recommendations."   Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).


        IT IS SO ORDERED.

    **Dated:    February 15, 2006**                    **/s/ Dennis L. Beck**
    3b142a                                 UNITED STATES MAGISTRATE JUDGE